IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–1424–MDB

J.D.C.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,

    Defendant.

---

## ORDER

---

    Plaintiff J.D.C. ["Plaintiff"] brings this action under the Social Security Act, 42 U.S.C. 405(g) ["the Act"], seeking judicial review of a final decision by Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security ["Commissioner"], denying his application for disability insurance benefits. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 9; ["Response"], Doc. No. 12; ["Reply"], Doc. No. 13.) The Commissioner has also filed the Administrative Record. (Social Administrative Record ["AR"], Doc. No. 6.) After carefully reviewing the briefs, the administrative record, and the applicable case law, this Court **AFFIRMS** the Commissioner's final decision.

---

[1] Pursuant to Local Rule, D.C.COLO.LAPR 5.2(b), Plaintiff J.D.C. is identified by his initials only.

## BACKGROUND[2]

Plaintiff, born May 27, 1960, applied for disability insurance benefits under Title II of the Act on December 28, 2017, alleging he became disabled on December 2, 2016. (AR 379.) Plaintiff alleged he could not work due to the following medical conditions: multilevel degenerative disc disease of the cervicothoracic spine, central spinal canal stenosis, foraminal stenosis, and bilateral shoulder osteoarthritis. (*Id*. at 521, 593.) Plaintiff's employment history includes positions as a senior vice president and president of mining and tunnel companies. (*Id.* at 20-22, 463.) The Commissioner denied Plaintiff's application on July 18, 2019, and again upon reconsideration on May 28, 2020. (*Id.* at 105, 121.) Plaintiff then filed a request for a hearing, which was held by an administrative law judge ["ALJ"] on November 4, 2021. (*Id.* at 47-74.)

After the hearing, on November 24, 2021, the ALJ issued an unfavorable decision denying Plaintiff's disability claim. (*Id.* at 7.) In her written decision, at step one of the five-step evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 2, 2016. (*Id.* at 17.) At step two, the ALJ concluded that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and osteoarthritis of the bilateral shoulders status post bilateral arthroscopy. (*Id.* at

---

[2] The following background focuses only on the portions of Plaintiff's history that are relevant to this Court's analysis.

[3] The Social Security Administration ["SSA"] uses a five-step evaluation process for reviewing disability claims. *See* 20 C.F.R. § 416.920(a)(4). Only step five — whether the Commissioner has demonstrated the claimant can adjust to qualified work based on the claimant's residual functioning capacity ["RFC"], age, education, and work experience is relevant here. *See* 20 C.F.R. § 416.920(a)(4)(v).

2

17.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments in the regulations. (*Id.* at 18.) After making this finding, the ALJ assessed Plaintiff's RFC and found him capable of light work, subject to the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds. He can frequently climb ramps or stairs, balance, stoop, kneel, and crouch. The claimant can occasionally crawl. The claimant can reach overhead frequently with the bilateral upper extremities.

(*Id.* at 21.) At step four, relying on the testimony of a Vocational Expert ["VE"], the ALJ concluded that Plaintiff was unable to perform his past relevant work. (*Id.* at 31.) However, at step five, the ALJ determined that because of Plaintiff's transferable work skills, he could successfully adjust to other work. (*Id.* at 32.)

In denying Plaintiff's benefits at step five, the ALJ explained that—even considering Plaintiff's age and his "acquired skills that came from the mining specific components" of his past work—Plaintiff's transferable skills came from his non-industry specific position as a senior vice president. (*Id.*) Taking into account Plaintiff's transferable skills, age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs such as chief executive officer, district director, and contract administrator. (*Id.*) As such, the ALJ found Plaintiff was not disabled as defined by the Act and denied his applications for benefits. (*Id.* at 34.)

The SSA's Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 11, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 7.) This appeal followed.

## LEGAL STANDARD

In Social Security appeals, the Court's review is limited to determining whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").

In making this determination, the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Nevertheless, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erroneously denied his application for disability insurance benefits because (1) the ALJ erred in concluding that Plaintiff had transferable skills and (2) her RFC determination is not supported by substantial evidence because it fails to account for his mental limitations. (Doc. No. 9 at 3-19.) The Court addresses these arguments and the Commissioner's counterarguments below.

4

**I. Step Five Determination that Plaintiff had Transferable Skills**

Plaintiff first contends the ALJ did not apply the proper legal standard or meet the legal burden at step five of the evaluation process. (*Id.* at 3-4.) Specifically, Plaintiff argues that due to his age and RFC, the ALJ should have applied the special rules for transferability. Under those rules—which apply to claimants over the age of 60—a claimant must be able to perform jobs with "very little, if any, vocational adjustment." (*Id.* at 4-5.) Plaintiff further argues that because the responsibilities of his past job as a senior vice president of a mining and tunnel company were very specialized, he would need to make more than minor vocational adjustments to work in another management position. (*Id.* at 6, 9.)

In response, the Commissioner asserts that the ALJ properly followed the applicable law, and that substantial evidence supports the determination that Plaintiff has transferable skills. (Doc. No. 12 at 16.) The Court agrees.

At step five of the sequential evaluation process, an ALJ must consider a claimant's RFC, together with the claimant's "age, education, and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 416.920(a)(4)(v). As part of this consideration and relying on the testimony of a VE, the ALJ will determine what level of skill the claimant achieved in his past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs. 20 C.F.R. §§ 404.1568, 416.968. "An ALJ can find a claimant's acquired skills are transferrable to other jobs 'when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different

5

jobs.'" *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) (quoting C.F.R. § 404.1568(d)(1)). Thus, "[w]hen an ALJ makes a finding that a claimant has transferable skills, [the ALJ] must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable." *Id.*

When a claimant is 60 or older and limited to light work, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f); *see also Crabb v. Colvin*, 12–cv–02935–RM, 2015 WL 5092889, *4 (D. Colo. Aug. 31, 2015). The "semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." SSR 82-41, 1982 WL 31389, at *5 (Jan. 1, 1982); *see also* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

Additionally, SSR 82-41's guidance states that "[g]enerally, where job skills are unique to a specific work process in a particular industry or work setting, e.g., a carpenter in the construction industry skills will not be found transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry." SSR 82-41, 1982 WL 31389, at *6. However, "where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." *Id.*

6

In the first four steps of the evaluation process, the claimant has the initial burden of establishing a disability. *Henderson v. Colvin*, 82 F. Supp. 3d 1218, 1221 (D. Colo. 2015). However, at the fifth step, the burden shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* at 1222; *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

In this case, the VE testified that Plaintiff's ability to—plan and direct with a board of directors, develop and establish procedures, ensure an agency meets standards, forecast, communicate, supervise, and lead—are all transferable skills he could use at a new job. (AR 32, 63.) Based on these transferable skills, the VE identified other managerial positions that Plaintiff could hold: as a contract administrator, district director, and chief executive officer. (*Id.* at 39.)

After the hearing, the ALJ issued a written decision and found that Plaintiff's acquired skills from his past work were "transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id.* at 32.) In making this determination, the ALJ recognized that Plaintiff was classified as an individual of advanced age, asked the VE about transferable skills, and made specific findings about those skills in the decision. (*Id.*) *See Dikeman*, 245 F.3d at 1185. The ALJ also recited the VE's testimony concerning the availability of jobs for an individual with Plaintiff's age, education, work experience, and RFC. (AR 32.) *See Rogers v. Astrue*, 312 F. App'x 138, 141-42 (10th Cir. 2009) (ALJs are permitted to rely on the VE testimony to determine the transferability of skills.) Indeed, the ALJ identified the job title, SVP level, and DOT number for each position, as well as the job availability for each position in the nation. (AR 33.)

The Court concludes that the ALJ did not err at step five. First, and contrary to Plaintiff's arguments, the Commissioner met the burden of showing Plaintiff can perform work in the national economy. (Doc. No. 9 at 3.) Second, the ALJ applied the correct legal standards. *See Henderson*, 82 F. Supp. 3d at 1222; *see also* 20 C.F.R. §§ 404.1568, 416.968. The ALJ also set forth the necessary findings as to the particular skills Plaintiff acquired in his previous job, and the specific jobs to which those skills are transferable. *See Dikeman*, 245 F.3d at 1185.

Additionally, the ALJ's decision is supported by the evidence. As noted, the record indicates that managing a mining and tunnel company allowed Plaintiff to acquire numerous skills, including supervising, planning, and leading. (AR 32, 63.) Based on this evidence, the ALJ concluded these abilities were relevant worker traits that Plaintiff could use in connection with managerial positions, such as contract administrator, district director, and chief executive officer. (*Id.* at 33.) Indeed, Plaintiff does not dispute that he acquired transferable managerial skills, nor does he question the accuracy of any of the vocational testimony.

The Court is not otherwise persuaded by Plaintiff's argument that because the skills he acquired in the mining and tunnel company were very specialized, he cannot perform different work with minimal vocational adjustment. (Doc. No. 9 at 6.) As discussed, SSR 82-41's guidance is that "where job skills have universal applicability across industry lines," including "managerial types of jobs," transferring skills can be accomplished with minimal vocational adjustment. Here, the ALJ noted that Plaintiff's transferable skills did not come from the mining-specific components of his job but instead from the managerial aspects and emphasized that Plaintiff's transferable skills "came from the senior vice president component of his past relevant work, a position that is not industry specific." (AR 33.) She also discussed how the VE's

testimony indicated that "all of the components of the work that involved the transferable skills would be very similar to the work [Plaintiff] already performed." (*Id.*) While Plaintiff may be required to learn the nuances of a new industry, the ability to plan, direct, develop and establish procedures, ensure an agency meets standards, forecast, supervise, and lead are all universally applicable skills—skills he acquired at his previous job.

Thus, the ALJ's decision—that Plaintiff requires little vocational adjustment for the positions the VE identified—is supported by substantial evidence, and the Court finds no error as to this issue.

## II.  RFC Assessment

Plaintiff next argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to discuss "the effect of Plaintiff's pain on his ability to perform mental activities." (Doc. No. 9 at 11.) In support of that argument, Plaintiff cites his subjective complaints detailing his inability to concentrate due to his difficulty sleeping, prescribed pain medication, and low tolerance for narcotics. (*Id.* at 13, 16.) The Commissioner maintains—and the Court agrees—that the ALJ adequately accounted for all the impairments but did not find Plaintiff's mental limitation claims credible. (Doc. No. 12 at 11-12.)

In evaluating a claimant's RFC, the ALJ must consider the combined effect of all medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); 20 C.F.R. § 404.1529(a). The RFC is the most a claimant can do in a work setting despite the claimant's mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1). Relevant factors to this inquiry include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate

and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measure other than treatment used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). While the ALJ must consider each factor in weighing a medical opinion, she is not required to engage in an explicit factor-by-factor analysis, so long as her written decision is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Although the ALJ did not expressly discuss the effect of Plaintiff's pain on his ability to perform mental activities, that omission is not a basis for remand so long as the ALJ appropriately considered the severity of the impairments. *See id.*; *see also Manning v. Colvin*, 182 F. Supp. 3d 1156, 1164 (D. Colo. 2016) ("[W]hile the regulations obligate the ALJ to consider whether the plaintiff's severe and non-severe impairments in combination are severe, *see* 20 C.F.R. § 404.1523, they do not require him to specifically *address* all such factors.") (emphasis in original). In denying benefits, the ALJ noted Plaintiff's assertions that pain interfered with his sleep and discussed Plaintiff's medication regimen. (AR 24, 28.) She then gave clear reasons linked to specific evidence in the record for her credibility assessment, finding that:

- "The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 22.)
- Plaintiff reported spending "30 minutes on the computer checking investments and the news," and engaging in "cleaning, including dusting, picking up dog hair, and microwaving meals. He also noted that he occasionally grocery shops with his wife . . . [and] does okay while pushing the cart." (*Id.*)
- "The claimant further testified that he goes for short walks, no more than a half mile round trip, on even ground. The claimant stated that he drives a car, but not for more than one hour." (*Id.*)
- The medical records showed a "positive response to treatment and notable functional abilities." (*Id.*)
- "The claimant was able to engage in physically demanding work for many years despite his spinal abnormalities." (*Id.* at 23.)
- Evidence showed that "despite reports of increasing, persistent pain, the claimant was not interested in changing his medication or treatment regimen." (*Id.*)
- Plaintiff reported that he had started to feel more in control of his pain and "was "maintaining a diet, exercise, and physical therapy routine." (*Id.* at 24.)
- Although "the claimant was not working, he was volunteering 'on an industrial review committee with the school of mines.'" (*Id.*)
- "As for a typical day, the claimant noted that he tends to his personal care needs independently, reads, completes miscellaneous chores around the house, prepare simple

11

meals, and rests. However, he did assert that he is frequently unable to complete chores. The claimant did report that he was able to tend to his self-care activities independently." (*Id.* at 28.)

The ALJ appropriately considered the severity of Plaintiff's alleged impairments and in doing so, observed a discrepancy between Plaintiff's statements and the evidence. Specifically, the ALJ found that the degree of limitation Plaintiff alleges is not supported by the evidence of impairment. Despite Plaintiff's assertions that he has trouble concentrating, evidence shows that he volunteers on an industrial review committee, spends time on the computer checking investments and the news, and takes care of his personal needs independently. (*Id.* at 22-28.) Indeed, medical evidence indicates that Plaintiff was showing significant improvement in his physical conditions, and that no mental health professional ever diagnosed him as suffering from a mental impairment. *See Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (rejecting argument that "the ALJ's RFC determination should have included [the plaintiff's] subjective complaints," where the ALJ found that the objective medical evidence did not support the plaintiff's "allegations concerning the . . . limiting effects of his pain."); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) ("ALJ can weigh and evaluate numerous factors in determining the credibility of pain testimony," including "the levels of medication and their effectiveness."). Plaintiff has also failed to identify, nor has this Court found, any significantly probative evidence that the ALJ ignored or overlooked. Thus, the ALJ's finding in this regard is supported by the record, and her determination is entitled to substantial deference. *See Watson v. Barnhart*, 194 F. App'x 526, 530 (10th Cir. 2006) (rejecting a plaintiff's argument that the ALJ "ignored various parts of the record regarding her shoulder impairment and back pain," where the ALJ

summarized the treatment records, and correctly noted that the plaintiff was given "several forms of conservative care for her back pain").

Moreover, to the extent Plaintiff challenges the relative weights the ALJ assigned to the medical opinions of record, the Court "may not reweigh the evidence." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014*); see also Fannin v. Commissioner, SSA*, 857 F. App'x 445, 448 (10th Cir. 2021) (stating that "to reweigh the evidence . . . exceeds the scope of substantial-evidence review").

In short, the Court perceives no error. The ALJ articulated valid reasons and factors explaining why Dr. Hoffman and Dr. Ryan's medical opinions were unpersuasive.[4] (AR 30, 31.) Most notably, she discussed how their opinions were contrary to the medical evidence, which showed that Plaintiff had a positive response to treatment and was able "to walk between a half mile and two miles, . . . use a snow blower," and had an "absence of gait or mobility disturbance." (*Id.* at 30-31.) Not only is this an appropriate basis for affording less weight to a medical source opinion, *see Fernandez v. Colvin*, 2014 WL 928246 at *3 (D. Colo. Mar. 10, 2014) (*citing Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)), but the ALJ appropriately tied that assessment to the evidence of record. Regardless, even if the record had

---

[4] The regulations governing the agency's evaluation of medical evidence were revised effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017). Under the new regulations, "the ALJ does 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] ... including those from [the claimant's] medical sources.' Rather, the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021), *cert. denied sub nom. Zhu v. Kijakazi*, 142 S. Ct. 2838, 213 L. Ed. 2d 1066 (2022) (internal citations omitted) (citing 20 C.F.R. § 404.1520c(a); § 416.920c(a); § 404.1520c(c); and § 416.920c(c)).

been replete with evidence to the contrary, the ALJ appropriately made a "choice between two conflicting views." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (alterations and internal quotation marks omitted); *see also Rivera v. Colvin*, 629 F. App'x 842, 843 (10th Cir. 2015) ("[W]here the evidence supports contrary findings, we will not disturb the ALJ's choice between them even if we would have made a different decision."). Accordingly, the Court concludes that the ALJ committed no error and finds no basis for reversal.

## CONCLUSION

For the reasons stated herein, the Court **AFFIRMS**.

Dated September 25, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge
